___



**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: March 9, 2018**

The Order of the Court is set forth below. The docket reflects the date entered.
___

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **JOSEPH D. GRIFFIN,** | **CASE NO. 17-01858-NPO** |
| **DEBTOR.** | **CHAPTER 13** |
| **JOSEPH D. GRIFFIN** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 17-00048-NPO** |
| **COUNTRY CREDIT, LLC** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER ON
### DEFENDANT COUNTRY CREDIT, LLC'S MOTION TO COMPEL
### ARBITRATION AND TO DISMISS OR STAY CLAIMS PENDING ARBITRATION

This matter came before the Court for hearing on December 15, 2017 (the "Hearing"), on the Defendant Country Credit, LLC's Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (the "Motion to Compel Arbitration or Stay Claims") (Adv. Dkt. 13)[1] filed by Country Credit, LLC ("Country Credit"), the Defendant Country Credit, LLC's Memorandum in Support of Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration ("Country Credit's Brief") (Adv. Dkt. 14) filed by Country Credit, the Response to Defendant's

___

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. __)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. __)".

Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (the "Debtor's Response") (Adv. Dkt. 16) filed by the debtor, Joseph D. Griffin (the "Debtor"), the Memorandum in Support of Response to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (the "Debtor's Brief") (Adv. Dkt. 17) filed by the Debtor, and the Defendant Country Credit, LLC's Reply to Debtor's Response to Motion to Compel Arbitration ("Country Credit's Reply") (Adv. Dkt. 18) filed by Country Credit in the Adversary. At the Hearing, Bryce Kunz represented the Debtor, and Adam Stone, Kaytie M. Pickett, and Jeffrey Ryan Barber represented Country Credit. During the Hearing, the Debtor and Country Credit (collectively, the "Parties") introduced into evidence three (3) stipulated exhibits. The issues in the Adversary are: (1) whether the Parties formed an agreement to arbitrate, (2) whether the arbitration agreement actually contains a delegation clause requiring the Parties' claims to proceed to arbitration, (3) whether compelling arbitration presents an inherent conflict between the Federal Arbitration Act ("FAA") and the purposes of the Bankruptcy Code (the "Code"), and (4) whether Country Credit waived the right to compel arbitration. The Court, having considered the pleadings, evidence, and arguments of counsel, finds as follows:[2]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. For the reasons discussed later in the Opinion, this is a non-core proceeding. Notice of the Motion to Compel Arbitration or Stay Claims was proper under the circumstances.

---

[2] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

**Facts**

1. On May 2, 2016, the Debtor entered into the Disclosure Statement, Promissory Note and Security Agreement (the "Loan Agreement") with Country Credit (Ex. 1). The Debtor financed $2,025.04 with a 43.47% annual rate of interest to be paid in fifteen (15) equal installments of $178.00 for a total payment to Country Credit of $2,670.00. (*Id.*) Additionally, the Debtor obtained from Country Credit credit life insurance at $53.75 per annum, credit disability insurance at $101.46 per annum, and credit property insurance at $131.02 per annum. (*Id.*)

2. The Loan Agreement consists of two (2) pages. The Debtor's signature appears at the bottom of the first page. On the second page, the following language (the "Arbitration Disclaimer") appears beneath the "Arbitration Agreement" heading: "The parties have this day entered into a separate arbitration agreement which affects certain rights of the borrower which is incorporated herein by reference and made a part hereof as if fully copied herein." (Ex. 1). The Debtor's initials appear at the bottom of the second page of the Loan Agreement.

3. The Alternative Dispute Resolution (Arbitration) Agreement (the "Arbitration Agreement") consists of two (2) pages and follows the Loan Agreement. (Ex. 1). The Arbitration Agreement "is entered into as part of the Loan Agreement." (*Id.*) Additionally, the Arbitration Agreement "covers claims that . . . arise out of or relate to this Agreement or the Loan Agreement." (*Id.*)

4. In Country Credit's Brief, Country Credit asserts that the Arbitration Agreement contains a delegation clause.

5. On May 18, 2017, the Debtor filed a petition for relief under chapter 13 of the Code. (Bankr. Dkt. 1).

6. On August 4, 2017, the Debtor filed the Complaint (the "Complaint") in this Adversary alleging that Country Credit violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z by providing misleading and incorrect disclosures on the Loan Agreement (Adv. Dkt. 1 at 4-5). For example, the Debtor alleges that Country Credit did not pay to the appropriate insurance company the amounts required for the Debtor's life insurance, disability insurance, and property insurance (Adv. Dkt. 1 at 3, ¶ 15). The Debtor further asserts that Country Credit "received and/or retained an undisclosed portion of these funds." (*Id.*) The Debtor also alleges that Country Credit violated MISS. CODE ANN. § 83-17-21 because it is not appropriately licensed to sell or provide insurance.

7. On September 5, 2017, Country Credit filed the Answer and Affirmative Defenses to Complaint [*Adv. Proc. Dkt. #1*] (the "Answer") (Adv. Dkt. 5). On September 21, 2017, Country Credit filed the Amended Answer and Affirmative Defenses to Complaint [*Adv. Proc. Dkt. #1*] (the "Amended Answer") (Adv. Dkt. 8). On October 30, 2017, Country Credit filed the Second Amended Answer and Affirmative Defenses to Complaint [*Adv. Proc. Dkt. #1*] (the "Second Amended Answer") (Adv. Dkt. 12), denying that it violated the Truth in Lending Act and demanding "a jury trial on all of the claim [*sic*] raised in the Adversary Proceeding Complaint." (*Id.*)

8. On November 1, 2017, Country Credit filed the Motion to Compel Arbitration or Stay Claims. In support of compelling arbitration, Country Credit asserted that the Debtor signed the Loan Agreement containing the Arbitration Disclaimer and signed the Arbitration Agreement, "thereby acknowledging the existence of the Arbitration Agreement with Country Credit and specifically agreeing to be bound by its terms." (Adv. Dkt. 13).

9. On November 27, 2017, the Debtor filed the Debtor's Response. In support of litigation, the Debtor asserted (1) that Country Credit waived the right to enforce the Arbitration Agreement; (2) that the Arbitration Agreement, if enforced, would negatively impact the Debtor's estate; (3) that granting the Motion to Compel Arbitration or Stay Claims would allow Country Credit to engage in forum shopping; (4) that the Arbitration Agreement contains waiver provisions that may be triggered in this Adversary; and (5) that procedural and substantive unconscionability preclude enforcement of the Arbitration Agreement. The Debtor attached to the Debtor's Response the Defendant Country Credit, LLC's Responses to Requests for Admission (the "Responses to Requests for Admission") (Adv. Dkt. 16-1) and Defendant Country Credit, LLC's Supplemental Responses to Requests for Admission (the "Supplemental Responses to Requests for Admission") (Adv. Dkt. 16-2).

10. On December 11, 2017, Country Credit filed Country Credit's Reply asserting (1) that the Debtor agreed to arbitrate the claims at issue, and the Debtor's claims do not fall within the "Small Claims Exception" to the Arbitration Agreement because the Debtor seeks attorneys' fees and punitive damages; (2) that the Debtor did not meet his burden of overcoming the presumption against waiver of the right to arbitrate; (3) that seeking to compel arbitration is not forum shopping; (4) that the Code does not bar enforcement of the Arbitration Agreement; and (5) that the Arbitration Agreement is not unconscionable.

11. At the Hearing, the Parties presented to the Court the Loan Agreement; the Schedule of Insurance (the "Life Insurance Agreement") (Ex. 2), which includes arbitration

provisions;[3] and the Schedule of Insurance (the "Property Insurance Agreement") (Ex. 3), which includes arbitration provisions.[4]

### Discussion

The Supreme Court of the United States has long acknowledged "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Indeed, the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. With this policy in mind, however, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

---

[3] The Life Insurance Agreement's arbitration provisions govern "any controversy arising out of or relating in any way to this certificate of insurance or the sale of this insurance, including for recovery of any claim under this certificate of insurance and including the applicability of this arbitration clause and the validity of this certificate of insurance." Neither the Life Insurance Agreement nor its arbitration provisions mention Country Credit or define it as a party to the contract. Accordingly, the Court will disregard the Life Insurance Agreement for the purposes of this Adversary.

[4] Likewise, the Property Insurance Agreement's arbitration provisions govern "any controversy arising out of or relating in any way to this certificate of insurance or the sale of this insurance, including for recovery of any claim under this certificate of insurance and including the applicability of this arbitration clause and the validity of this certificate of insurance." Neither the Property Insurance Agreement nor its arbitration provisions mention Country Credit or define it as a party to the contract. Accordingly, the Adversary is distinguishable from this Court's recent opinion in *Willis v. Tower Loan of Mississippi, LLC (In re Willis)*, and the Court will disregard the Property Insurance Agreement for the purposes of this Adversary. *See In re Willis*, 579 B.R. 381 (Bankr. S.D. Miss. 2017).

Thus, the enforcement of an arbitration agreement is a matter of both contract formation and contract interpretation. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The Fifth Circuit Court of Appeals has established a two-prong test for courts to follow when ruling on a motion to compel arbitration: (1) "whether the parties entered into *any arbitration agreement at all*" and (2) "whether *this* claim is covered by the arbitration agreement." *Id.* When an "arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim . . . the court's power to decide arbitrability questions [transfers] to the arbitrator." *Id.* at 201-02. In other words, "a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* at 202; *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). When a "party seeking arbitration points to a purported delegation clause," the court limits its analysis to that of contract formation and answers only the question of whether the parties entered into an agreement to arbitrate some set of claims. *Kubala*, 830 F.3d at 202. If the court finds both a valid agreement to arbitrate and a delegation clause within that agreement, "the motion to compel arbitration should be granted in almost all cases." *Id.*

Here, Country Credit contends that the Arbitration Agreement contains a valid and enforceable delegation clause (Adv. Dkt. 14). As a result, the Court will address whether the Parties entered into a valid agreement to arbitrate "some set of claims" and, if so, whether that agreement contains a delegation clause requiring the Parties' claims to proceed to arbitration "for gateway rulings on threshold arbitrability issues." *Id.*

**A.     Did the Parties enter into a valid agreement to arbitrate a set of claims?**

The "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enters., Inc. v. Gaskamp*,

280 F.3d 1069, 1073 (5th Cir. 2002); *see also Volt Info. Scis., Inc.*, 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."). Instead, state contract law determines whether parties entered into a valid agreement to arbitrate a set of claims. *Kubala*, 830 F.3d at 202. Since the Loan Agreement provides that the Uniform Commercial Code of Mississippi governs the "Security Agreement" portion of the document and the Parties directed the Court to Mississippi law in their pleadings and at the Hearing, the Court will apply Mississippi law to determine whether the Parties entered into a valid agreement to arbitrate their claims.

Under Mississippi law, "[t]he elements of a valid contract are: '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003) (quoting *Lanier v. State*, 635 So. 2d 813, 826 (Miss. 1994)). The Court will address each element in turn.

First, the Arbitration Agreement is between two or more parties—the Debtor and Country Credit.[5] Second, the Arbitration Agreement is supported by the consideration of mutual promises to arbitrate,[6] the Debtor's promise to pay the amount owed to Country Credit under the Loan

---

[5] The Arbitration Agreement defines the parties as Country Credit "together with all of its directors, officers, employees, agents, parent corporations, subsidiary corporations, corporations affiliated with Country Credit . . . by direct or indirect common ownership, any person or entity that may be held jointly and severally liable with [Country Credit], and assignees of any of the foregoing" and the Debtor "who ha[s] entered into this Agreement and those who have entered into the Loan Agreement entered into on this same date . . . together with all of his . . . executors, successors, assigns, and any person who claims rights arising out of or relating to the relationship between [the Debtor and Country Credit]." (Ex. 1).

[6] The Arbitration Agreement provides, "With limited exceptions, [the Debtor] and [Country Credit] agree that any and all disputes, claims, or controversies of any kind and nature between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration." (Ex. 1).

Agreement, and Country Credit's extension of a loan to the Debtor.[7] *See McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 453 (Miss. 2004) (holding that mutual promises to arbitrate claims constitute sufficient consideration and stating that "mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration"). Third, the Arbitration Agreement is in writing, and its terms are sufficiently definite. A contract is sufficiently definite when it contains enough information to "enable the court under proper rules of construction to ascertain its terms." *Hunt v. Coker*, 741 So. 2d 1011, 1014 (Miss. 1999) (quoting *Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991)). Here, the Arbitration Agreement defines the parties, explains which claims are subject to arbitration, provides the procedure for satisfying the costs of arbitration, and establishes the location for the arbitration. Additionally, the FAA governs the Arbitration Agreement. Fourth, the Court has no reason to believe that the Debtor is not a legally competent adult with the capacity to bring suit and the capacity to contract. Fifth, the Debtor's signature and/or initials on each page of the Loan Agreement and Arbitration Agreement and Country Credit's signature on the last page of the Arbitration Agreement evidences the Parties' mutual assent. Sixth, "Mississippi follows the federal policy favoring arbitration" and does not prohibit parties from arbitrating consumer contracts. *Citibank, N.A. v. Stovall*, 211 So. 3d 700, 701 (Miss. 2016). Accordingly, the Court finds that the Debtor and Country Credit formed a valid contract to arbitrate their claims.

---

[7] The Loan Agreement provides, "FOR VALUE RECEIVED: [the Debtor] promises to pay to the order of [Country Credit] named above, at its office, and subject to the terms hereof the Total of Payments as stated above in consecutive monthly installments as stated as beginning on the due date for the first payment stated above and continuing on the same day of each succeeding month thereafter until fully paid." (Ex. 1).

**B. Does the Arbitration Agreement contain a delegation clause requiring the Parties' claims to proceed to arbitration?**

In Country Credit's Brief, Country Credit asserted that "[t]he Arbitration Agreement contains a delegation of threshold issues of arbitrability to the arbitrator." (Adv. Dkt. 14 at 6). When an agreement contains a valid delegation clause, the court, absent an exceptional circumstance, must "refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202. A delegation clause "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* Here, the Arbitration Agreement provides,

> This agreement to arbitrate covers claims that (a) arise out of or relate to this Agreement or the Loan Agreement; (b) arise out of or relate to any past transactions or dealings between us; (c) arise out of or relate to any future transactions or dealings between us; and *(d) disputes about whether any claims, controversies, or disputes between us are subject to arbitration to the extent permitted by federal law*.
>
> \* \* \*
>
> Examples of disputes that are required to be arbitrated under this Agreement include . . . [claims] that any Alternative Dispute Resolution Agreement between us is void or voidable based on alleged fraud, unconscionability, duress, illegality, or any other ground . . . [claims] that the parties never entered into a Loan Agreement or an Alternative Dispute Resolution Agreement; [claims] regarding the scope or interpretation of any Loan Agreement or any Alternative Dispute Resolution Agreement . . . [and] alleged violations of federal or state statutes.

(Ex. 1 at 3) (emphasis added). Accordingly, the Court finds that the Arbitration Agreement contains a valid delegation clause because "the parties agreed that the arbitrator and not the court should be the decisionmaker on whether a given claim is arbitrable." *Kubala*, 830 F.3d at 204. The Court reaches this finding even though the Debtor argued at the Hearing that granting the Motion to Compel Arbitration or Stay Claims would present an inherent conflict between the FAA and the Code and that Country Credit waived its right to compel arbitration. The Court will address each of the Debtor's arguments.

### 1. Arbitration would not conflict with the purposes of the Code.

A "bankruptcy court has discretion to deny enforcement of the arbitration clause only when enforcement would conflict with the purpose or provisions of the Code." *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 498 (5th Cir. 2002). Importantly, however, "a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)." *In re Gandy*, 299 F.3d at 495; *see also In re Shores of Panama, Inc.*, 387 B.R. 864, 865 (Bankr. N.D. Fla. 2008) ("If the proceeding is non-core, the bankruptcy court has no discretion and must compel arbitration."). Thus, the first step in addressing whether arbitration conflicts with the Code is to determine whether the Debtor's claims are "core" or "noncore" proceedings.

A core proceeding is one that "arises under" or "arises in" a case under title 11. 28 U.S.C. § 1334(b). More specifically, "[p]roceedings 'arise under' title 11 if they involve a 'cause of action created or determined by a statutory provision of the Bankruptcy Code.'" *Buckingham v. Baptist Memorial Hospital-Golden Triangle, Inc.*, 283 B.R. 691, 693 (N.D. Miss. 2002) (quoting *In re Goldstein*, 201 B.R. 1, 4-5 (Bankr. D. Me. 1996)). Additionally, "[p]roceedings 'arising in' a bankruptcy case 'are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy.'" *Id.* In a core proceeding, a bankruptcy court may refuse to enforce an otherwise applicable arbitration agreement only if enforcement of the agreement would conflict with the purpose or provisions of the Code. *Ins. Co. of N. Am. v. NCG Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1069-70 (5th Cir. 1997). That is, in a core proceeding, a bankruptcy court has discretion to override an arbitration agreement only if "it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the [Federal] Arbitration Act or that

arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (quoting *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999)); *In re Mirant Corp.*, 316 B.R. 234 (Bankr. N.D. Tex. 2004).

A non-core proceeding is a matter that would exist outside of the bankruptcy, but is "related to" a bankruptcy case. 28 U.S.C. § 1334(b). More specifically, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Buckingham*, 283 B.R. at 693 (quoting *In re Goldstein*, 201 B.R. at 4-5)).

In the Complaint, the Debtor asserts that the Adversary is a core proceeding under 28 U.S.C. § 157(b)(2)(C) and/or § 157(b)(2)(O). The Debtor alleges, however, that Country Credit violated the Truth in Lending Act and Mississippi laws regulating insurance procedures. As a result, the Debtor's claims "do not depend on provisions in the Bankruptcy Code for their existence [but] [r]ather, they are 'non-core' or 'related' proceedings that would not be in this court but for the filing of the [Bankruptcy Case]." *First Franklin Corp. v. Barkley (In re Anthony)*, 334 B.R. 780, 787 (Bankr. N.D. Miss. 2005). Accordingly, the Court finds that the Adversary is a non-core proceeding, and the Court does not have discretion to refuse to compel arbitration.[8] *See In re Gandy*, 299 F.3d at 495.

---

[8] Even if the Adversary somehow did constitute a core proceeding, Country Credit's assertion at the Hearing to pay all costs of the arbitration, including the initial filing fee, and to "forgo seeking any award of fees and costs by the arbitrator" alleviates the Debtor's concerns about the arbitration costs negatively impacting the Debtor's bankruptcy estate and interfering with his fresh start. (Adv. Dkt. 18).

### 2. Country Credit did not waive its right to compel arbitration.

At the Hearing and in the Debtor's Brief, the Debtor asserted that Country Credit is in default on its right to arbitrate under § 3 of the FAA[9] because of its active participation in the Adversary which has prejudiced the Debtor. The Debtor argued that "by engaging in post-complaint litigation, [Country Credit] waived its right to enforce this [Arbitration] [A]greement." (Adv. Dkt. 17). More specifically, the Debtor argued that Country Credit waived its right to seek arbitration because it filed three answers to the Complaint, engaged in discovery, and then filed the Motion to Compel Arbitration or Stay Claims in the Adversary. Because of this conduct, the Debtor asserted that compelling arbitration would harm him negatively "by being required to refile another proceeding, pay those fees, appear in another unknown forum, and re-do discovery." (*Id.*)

In response, Country Credit argued that its actions in the Adversary do not amount to waiver of its right to seek arbitration. Particularly, Country Credit has not served any discovery in the Adversary but rather answered requests for admission. (Adv. Dkt. 18). Further, Country Credit noted that it has not taken or participated in any depositions, and it has not filed any dispositive motions in the Adversary. (*Id.*)

Since federal policy favors arbitration, "[t]here is a strong presumption against finding a waiver of arbitration." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). However, "[t]he right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). Determining what constitutes a waiver

---

[9] Section 3 of the FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

of the right of arbitration is a fact-specific inquiry. *See Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985). The Fifth Circuit has held that "a party waives its right to arbitrate if it (1) 'substantially invokes the judicial process' and (2) thereby causes 'detriment or prejudice' to the other party." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).

A party invokes the judicial process when "at the very least, [it] engage[s] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999). Additionally, "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate. *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480-81 (5th Cir. 2009).

Before filing the Motion to Compel Arbitration or Stay Claims, Country Credit filed the Answer on September 5, 2017, and the Amended Answer on September 21, 2017. On October 12, 2017, Country Credit submitted to the Debtor its Responses to Requests for Admission. On October 27, 2017, Country Credit submitted to the Debtor its Supplemental Responses to Requests for Admission. Three days later, Country Credit filed the Second Amended Answer in the Adversary. In the Second Amended Answer, Country Credit stated that it "demands a jury trial on all of the claim [*sic*] raised in the Adversary Proceeding Complaint, and Country Credit, LLC does not consent to having a jury trial conducted by a Bankruptcy Judge . . . or to the entry of final orders or judgment by the Bankruptcy Court." (Adv. Dkt. 12). Two days after filing the Second Amended Answer, Country Credit filed the Motion to Compel Arbitration or Stay Claims in the Adversary. At the Hearing, Country Credit argued that it answered the Debtor's requests for admission because it did not want any allegations to be deemed admitted and noted that it did not conduct any discovery of its own.

When "the party seeking arbitration has made a timely demand for arbitration at or before the commencement of judicial proceedings in the [t]rial [c]ourt, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver." *SW Indus. Import & Export, Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975). In other words, "[o]nce the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver." *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 n.5 (5th Cir. 1970). In the Answer, Amended Answer, and the Second Amended Answer, Country Credit raised as a defense that "any and all claims against [Country Credit] should be compelled to arbitration." (Adv. Dkt. 5; Adv. Dkt. 8; Adv. Dkt. 12). Thus, even before filing the Motion to Compel Arbitration or Stay Claims, the Debtor was aware that Country Credit was seeking to pursue arbitration under the Arbitration Agreement. *See Tenneco Resins, Inc.*, 770 F.2d at 420 ("Although [defendant] did not move for a stay pending arbitration until approximately eight months into the litigation, in its answer to the original complaint, [defendant] did seek to have the action dismissed because the dispute was covered by a valid and enforceable arbitration clause thereby putting [plaintiff] on notice as to its desire to arbitrate the matter.").

Like the Fifth Circuit found in *Tenneco Resins, Inc.*, the Court finds here that the record in the Adversary "does not fairly support a conclusion that [Country Credit] has substantially utilized the legal process before moving for a stay of judicial proceedings so that the dispute could be settled by arbitration." *Id.* While the defendant in *Tenneco Resins, Inc.* waited nearly eight (8) months to file a motion to stay the proceedings, the Fifth Circuit found that it "and other courts have allowed such actions as well as considerably more activity without finding that a party has waived its contractual right to arbitrate." *Id.* at 420-21; *see Gen. Guar. Ins. Co.*, 427 F.2d at 924 (holding that defendant did not waive its right to invoke arbitration after filing an answer denying

liability, filing counterclaims, attempting to implead parties, and participating in two depositions before demanding arbitration); *J & S Constr. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809 (1st Cir. 1975) (affirming that defendant did not waive its right to invoke arbitration after filing an answer, demanding a jury trial, answering interrogatories, participating in depositions, and waiting more than one year before demanding arbitration).  Here, Country Credit consistently maintained in its answers its desire to arbitrate and filed its Motion to Compel Arbitration or Stay Claims about three (3) months after the Debtor filed the Complaint.  Additionally, Country Credit did not propound discovery but rather responded to the Debtor's requests for admission.  Accordingly, the Court finds that Country Credit did not substantially invoke the judicial process.  Having reached this finding, it is unnecessary for the Court to consider whether Country Credit's actions in the Adversary prejudiced the Debtor.  Based on the lack of evidence that Country Credit "substantially invoke[d] the judicial process," the Court finds that Country Credit has not waived its right to enforce the Arbitration Agreement.

## Conclusion

For the above and foregoing reasons, the Court concludes that the Parties agreed to arbitrate their claims under Mississippi law.  Further, the Arbitration Agreement contains a valid delegation clause requiring the Debtor's claims to proceed to arbitration for the arbitrator to decide gateway arbitrability issues.  Additionally, the Adversary is a non-core proceeding, and the Court does not have discretion to refuse to compel arbitration.  Finally, Country Credit did not substantially invoke the judicial process and, therefore, has not waived its right to enforce the Arbitration Agreement.

The Court further concludes that the Adversary should be stayed until further order of this Court for purposes of allowing arbitration to proceed and for entry of a final and binding decision

or award, but not for entry of a judgment in any court of competent jurisdiction or for purposes of collection of any award that may be obtained by Country Credit through the arbitration process.

To the extent the Court has not addressed any of the Parties' other arguments or positions, it has considered them and determined they would not alter the result. A separate final judgment shall be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##